Good morning, everyone. The panel has before it today a total of five cases. Two of them are being submitted on the Briefs Without Oral Argument, namely Appeal No. 05-7203, Grant v. Department of Veterans Affairs, and Appeal No. 06-3003, Lloyd v. the Army. On the Briefs Without Oral Argument, we have Appeal No. 05-3401, Hancock v. Department of Interior. Mr. Adelman? Yes, Your Honor. Welcome. Good morning. Thank you. Please proceed. May it please the Court. Following Dr. Hancock's unannounced decision to begin a relationship with, excuse me, to, decision to divorce from her husband, who had been there for two weeks with her when she first arrived, Dr. Hancock began a living with relationship with a coworker, Mr. Haskins. Mr. Adelman, we've read the briefs and the opinion of the administrative judge, so we probably have a reasonable grasp of the facts and the procedural history. You might want to conserve your very limited time to concentrate on your core contentions on me. The issue is whether the credibility determinations of the administrative judge were supported by substantial evidence or whether the case presented at the trial-like hearing by your client so undermined the testimony of the first and second-line supervisors that we would have to conclude that those credibility determinations against your client and in favor of the supervisors were supported by something less than substantial evidence. So what is the testimony that guts the testimony of Mr. Hughes and the other government witnesses? Your Honor, for the purposes of argument herein, let us assume, without conceding the point, that the administrative judge correctly determined that there was substantial evidence that the agency had grounds to terminate Dr. Hancock. The administrative judge did not then allow for even the possibility that there could be simultaneously existing both substantial evidence such as the justifying the agency's grounds and there also could coexist simultaneously substantial evidence that the agency had practiced marital status discrimination. I read her as finding precisely to the contrary that the reason for the dismissal during the probationary year was that was there was unprofessional behavior on a repeated basis by Dr. Hancock and that that was the reason and marital discrimination was not the reason. So again, it seems to me, to win, you have to convince us that there is no substantial evidentiary support for those two findings. But Your Honor, we can concede that even assuming that there was substantial evidence for the finding that the agency had grounds to terminate Dr. Hancock, it seems that the agency's case was basically on the basis that... You can't win, sir, by saying you had substantial evidence supporting your position. The fact finder has found the facts. To win, you have to show that those facts lack substantial evidentiary support. That's the law. It wasn't just the facts, Your Honor. An important part of our case is the fact of the large number of procedural due process errors that cut off my client's right to present a case, having only 30% of her witnesses allowed to testify. There's no rule about percentage. As I recall, it was three full days of trial, something like 15 witnesses allowed to be called on your side, some smaller number, maybe a handful for the government. The opinion shows a minute grasp of the facts. It's a little hard to conclude that you were precluded from presenting the part of your case when you had so many trial hours and so many witnesses that you were permitted to call. Your Honor, first of all, there were nine witnesses that were allowed for my client. The majority of the most significant witnesses, the witnesses who were aware of precisely how this superintendent and his deputy operated, the person who was the administrative aide who had watched several months before the superintendent discharge a married, effectively discharge a married person in a similar position with Dr. Hancock. These people were not allowed to be as witnesses. All trial judges have to cut it off somewhere. When counsel try to present more and more and more attenuated testimony about a larger and larger number of peripheral or potentially even irrelevant transactions, trial judges have to finally say, I'll allow this witness, but not that witness. I'll allow the third one, not the fourth one. And we have to defer to that to a very great extent. We use the rubric of abuse of discretion. You have a very heavy burden to show that your critical witnesses were not allowed to testify when nine were. There's also the matter, your Honor, that at the pre-hearing conference, there were three witnesses who were approved as rebuttal witnesses. We were never allowed any rebuttal. The process ended. The whole team of the administrative judge, the court reporter and counsel for the Department of Interior got on an airplane the next day on a Friday and went home, and we were not allowed even any significant final argument, the ability to... This is not a jury trial. This was a three consecutive days, as I recall, of lengthy trial days all together in the same room. At the end of the third day, the trial judge, I'll call her, the administrative judge of the board, doesn't need to be told in great detail what she just heard. She hasn't had time to forget it yet. If it were a jury trial or a three-month trial, you might have a very strong point that highly abbreviated closing statements are unfair, but under the circumstances of this case, it's a much harder proposition to sell, I would think. The major point here, Judge Michael, is that we had been told that we would have a chance to rebut rebuttal evidence. When it came down to it, the judge arbitrarily decided, not giving any reasons of any kind, we were not allowed to present any rebuttal evidence. I thought she ruled that there was no purpose in rebuttal because the proposed rebuttal didn't deal with the core issues in the case. No, Your Honor. That was what the government would like you to believe at this point, but it was never stated. In fact, all of the discussion concerning rebuttal took place, because that's the way the administrative judge decided to do it, off the record. At the close of the last bit of testimony that she allowed, she went off the record, told us that this is it, we're closing the record, it's over, no rebuttal, and she didn't explain at all why the rebuttal witnesses who she specifically allowed to be rebuttal witnesses would not be allowed, other than the fact that it was eight o'clock at night on the third day, and that's it. She was simply closing it. So we didn't get a chance to put on any rebuttal evidence. I mean, there are cases here dealing directly with that. We have Stokes in which the court specifically said that you have to look at the entire record to evaluating what is substantial evidence. That doesn't deal with the exclusion of rebuttal witnesses. That seems to be on a different point. Even in Jacobs, where it says that given that there was comparable, perhaps weightier, evidence against the agency, which we would have on rebuttal, and a lot was presented, which the board made no effort to evaluate. If you take a look at the initial decision, there was no attempt made on the part of the judge to evaluate any of the evidence that was supporting Dr. Hancock's position. There was no consideration of the court's intention to evaluate the evidence that was presented to the board, and there was no  Hancock's position. So if you pursue that direction, my understanding of the basis on which this case was heard at the threshold was because there was an allegation, at least a prima facie allegation, of discrimination because of marital status. But for that, there would have been no basis for appeal during the probationary period. Correct. So that the purpose of the hearing, although it did enable and perhaps require presenting significant evidence as to what the issues were, nonetheless were directed at determining whether the action was based on Dr. Hancock's marital status. And if the administrative judge determined that that was not the basis for the action, whatever the basis was, whether it was a sense of morality, perhaps let's just concede a misplaced sense of morality in today's world, that nonetheless, unless you were able to establish at the threshold that the action was discriminatory based on the fact that she was married and not single, that there would have been no appeal at all. Is that your understanding of how it proceeded before the administrative judge? Yes, Your Honor, that is my understanding. So that the question of substantial evidence would certainly be highly relevant to a decision on the merits. But at the threshold, is your perception that the AJ decided that, yes, there is enough of a prima facie case to permit determination of the merits of the removal, or that there was not enough of a prima facie case of discrimination to reach the merits of the removal? I believe that in terms of allowing a certain amount of evidence in, the administrative judge did allow evidence in initially to allow us to get to that first point. And then when the burden shifted, and the government got to put on its case, they put on a case. However, we never got to put in any evidence in reply in any rebuttal to the government's evidence. It was completely cut off. And we were not allowed the opportunity to basically rebut the government's evidence. And that, I believe, is the heart of what it is we are concerned about and asking this court to that, yes, things do shift. And once the government puts on evidence showing that there was a apparent or substantial evidence for a good faith reason, then the person, the claimant, Dr. Hancock, whose case gets an opportunity to put on further evidence showing that, yes, there was in fact discrimination in a way of rebutting what the government has put on. But we never got that opportunity. Mr. Edelman, you're down to two minutes of rebuttal. Do you want to reserve the rest of your time? Yes, I do, Your Honor. Thank you kindly. Mr. Auerbach. Would you address first the exclusion of all rebuttal witnesses? Certainly, Your Honor. As an initial matter, the relevant inquiry for the court is whether or not the refusal to hear rebuttal testimony was an abuse of discretion. We're quite aware of the standard of review. I'm asking you a factual question of why was the materiality of the testimony of the three proffered rebuttal witnesses so minimal as to justify their complete exclusion? Initially, Your Honor, I'd like to correct what I believe is a misstatement of Mr. Edelman. The only witness who was actually identified on the record by Mr. Edelman at the time that the hearing closed and Mr. Edelman indicated he wanted to put on rebuttal testimony was his own client. By that point, his client had already testified for a substantial period of time and the court had already determined or made an assessment concerning her credibility. On the record, but we're told the discussion took place off the record. It doesn't count. Your Honor, we don't know what happened off the record, but we do know what happened on the record, which is that when asked, you don't know you're here defending the government. I'm sorry, Your Honor. You're here representing the United States. You don't know what happened. I do know what happened, but I can represent what is on the record. And what is clear is that when asked, who do you want to put on for rebuttal? The only person Mr. Edelman identified was his own client. Was there a proffer of what she would say in rebuttal that would meet something that the government's witnesses had said that she had already not previously spoken to herself? I'm unaware of any such proffer and Mr. Edelman's brief is devoid of any allegation or any specific fact that would have been alluded to on rebuttal that could conceivably have altered the administrative judge's decision concerning credibility. What about the exclusion of the other witnesses, whatever the number was? A dozen or so, according to the count of Mr. Edelman? The administrative judge had originally required the parties on December 2nd, 2002, to have a conference and inform the judges to what the relevance of each witness's testimony was to be. On December 2nd, Mr. Edelman indicated that he had not spoken to a majority of those witnesses and that he needed additional time for him to contact certain witnesses and... Well, what I want to know is what would they have testified to and what was the basis of excluding so many witnesses sought to be called by Dr. Hancock? Many of the witnesses listed on the witness list were to provide, or at least according to the representation made, were to provide testimony concerning such things as what relationships in and out of work and other romantic relationships, some other employees other than Dr. Hancock may have had with either... Were those witnesses excluded on the basis that this litigation was not about romance or illicit affairs but was about professionalism on the job? Your Honor, that's my understanding. I don't have anything specific to point to, but I'm certainly informed. I can tell you what I know that's not on the record, but there's nothing in the record. I don't think we can permit you to testify here as if this were a trial court and you were a fact witness. You certainly are limited to the record or something off the record that's subject to judicial notice. What I can indicate is that the witnesses who were excluded were to provide largely information concerning other people's romantic relationships, other people's job performance, in an attempt to somehow compare Dr. Hancock's performance... That was fundamental to her establishing jurisdiction to appeal in the first place. Unless she can establish discrimination, which includes disparate treatment based on marital status, she had nothing to appeal, whether her performance was good or bad, anything else. So that unless, in fact, it was conceded that she had the right to appeal the merits of her removal because she had established prima facie and didn't need further witnesses, that this was marital status discrimination. Is that the government's position? Your Honor, I have to confess I didn't understand the question. It was a probationary period. Correct. She has no right to appeal other than on two grounds. This is one of them. This is what she's arguing. I was discriminated against because I was a married woman having an affair. Correct. So she seeks to provide testimony to support that position. That's correct, Your Honor, but it's also incumbent upon the trial judge, or the administrative judge in this instance, to be able to provide a basis and to ensure a basis for apples-to-apples comparisons and not go off on frolic and detour about how other employees were treated in entirely different circumstances, such as, for example, whether or not a person was disciplined for having a married person, an unmarried woman was disciplined for having... How do you show discrimination in Title VII cases by comparative treatment? How are others treated? What's the culture, the community? Certainly, Your Honor, there is a limited room, or there is room up to a point for comparing what happened in one case to what happened in another, but in order to prevent every single other person's employment history from becoming a sideshow and getting away from the fundamental issue, which is whether or not the reason offered for Dr. Hancock's termination was a pretext, there needs to be some discretionary line drawn so as to ensure a meaningful basis for comparison. What testimony was admitted about the treatment of other women at that park, both married and unmarried, so one could draw some inferences? One employee, about whom Mr. Edelman suggests his client was not able to provide information, did, in fact, have an opportunity to testify. That was Jennifer Cerny, and she was, in fact, permitted to testify on behalf of Dr. Hancock. About the treatment by the same managers of her? Concerning relationships that... Concerning the treatment, yes. Concerning the treatment that she received... Now, was she a married woman or a single woman? She is a single woman. Okay, and now were there some married women whose experiences with allegedly harsh treatment to compare with the single women? I mean, you have to show that there's some different treatment, so you have to look at one or more examples on the married side and on the single side, or you don't have anything to compare. Your Honor, I don't know the marital status of each of the witnesses who, in fact, testified, but... Were they having an affair, whether they were married or not, with someone that they were supposed to investigate the background of and make a recommendation to hire them to the agency? I'm sorry, Your Honor? Was this situation... You don't understand my question? Yes, I understand. This situation, the woman was supposed to look into his background, the guy she was having the affair with, and she was recommending him for employment when he had a deficient background, right? That's correct, Your Honor. Whether they were married or not, did any of these other women have a situation like that, whether it was a performance going directly... Your Honor, there's nothing in the record to suggest... I'm sorry. There's nothing in the record to suggest a meaningful basis for a comparison to the unique circumstances of this particular case. Then it wouldn't be relevant, would it? It would not, Your Honor. Well, would Cernan even have been relevant? If the issue is, was the person, whether singled or married, similarly situated, it doesn't seem that any prospective witness was similarly situated, at least with respect to the circumstance Judge Mayer described, in which case no witness should have been called. Your Honor, the notion of whether or not someone is similarly situated cannot be necessarily confined to the issue of whether or not another witness encountered precisely the same facts on all fours as what Dr. Hancock experienced, because as the court proceeds, there would never be any opportunity to compare what happened from case to case. But there does have to be a line drawn somewhere, and enabling the trial court to limit the number of witnesses to conduct a hearing within three days necessarily requires that some meaningful basis for comparison. Well, Mr. Adelman basically is suggesting the hearing should have had a fourth day, and it should have included his rebuttal witness or witnesses. You disagree about the number, but that's the essence of what he's saying, is that he terminated the trial too fast. I'm trying to understand what would make it look premature or what would make it look not premature. I think, Your Honor, the best barometer as to whether or not it was premature or not Mr. Adelman can identify a single fact that would have suggested from any witness whose testimony was excluded that would have in any way undermined the ALJ's conclusion. Nowhere in his brief and nowhere in the record is there any evidence that Mr. Adelman has ever raised that suggests that the case would have somehow been different or that the ALJ's conclusion would somehow have even succeeded. So you're saying no prejudice, even if some witness was excluded, perhaps improperly, there was no harm to the case of Dr. Hancock? We're certainly arguing that there was no harm, but to buttress our argument that there was no abusive discretion in the first instance, we are indicating that there's nothing wrong with what happened as evidenced by the fact that there are no facts. Do you agree that the scope of this hearing should have been measured by the terms of the Civil Rights Statute? Your Honor, the question of, I'm not sure I completely understand the question in terms of the standards of shifting burdens. Judge Newman alluded expressly to Title VII, and it does provide an interesting analog. And I believe it was the import of her question that in a Title VII case, the scope of relevance is quite broad, that there's lots of data admitted about how various people are treated so that you can build up a pattern of data to see if there's a pattern of discrimination, whether it's based on race or gender or whatever the particular factor might be. And earlier, you seemed to suggest that a narrower band of relevance should be drawn. And so that raises in my mind the question of, is the right metric the Title VII metric, or is the right metric something much narrower? And if so, what and based on what authority? Your Honor, I think Title VII represents an analog that is appropriate, particularly, and I think this is evidenced in the manner in which the ALJ weighed the evidence and employed a burden-shifting mechanism to determine whether or not a first-or-prime or past-judge case had been established, and if so, whether or not the reason to offer this protection. Well, there's no complaint that the burden was shifted from her to the government. The complaint is that in ruling that the government successfully carried that burden, there were undue restrictions on the scope of witnesses on behalf of Dr. Hancock. Now, you say, and it's quite right, the presiding judge has to draw the line somewhere. Well, of course, we all agree with that. The question is where and on what basis? Judge Newman suggested, I thought, that really it should be drawn just where you would draw it in a Title VII case, because discrimination is at the heart of it. I just want to know whether you agree with that or you don't agree with that. I do, Your Honor, although I think it's important, and I have an although. You do, but you don't. The Title VII is somewhat different in that the question of whether or not someone was retaliated against because of their gender is not necessarily the same issue as whether or not they were terminated because of their marital status. Now, that's right. Let me clarify what I was trying to get at. The people who removed her testified, and I think it was also in writing. I think it was unequivocal. She was removed because they didn't care for her morals, her morality. They said it was disruptive. They said it was improper, and they didn't like it. She sought to introduce evidence that here in Hawaii, this is how people behave. Things are looser. Supervisors were having affairs with unmarried women. In order to try and get this case of removal after only three months on the job into the statute for MSPB appeals, there are only two bases on which you can appeal. One of them is marital status discrimination. So she says, well, there are all these affairs between unmarried people. I happen to be married, although separated or whatever the facts may have been. Therefore, I'm discriminated against because I'm disapproved of, and these other people who are doing exactly the same thing, but without this added encumbrance of a spouse someplace, it's accepted. So that was what, as I understood it, she was trying to continue to establish and to establish on rebuttal. And to me, the question, the fundamental question, which I didn't really see anyone arguing, is, in fact, removal on moral grounds, which perhaps within the probationary period can be done. Whatever someone's morality is different from removal based on marital status discrimination. And if so, then I would assume there'd be no basis on which she could appeal, and it should have been dismissed, even though I appreciate that the AJ will often listen to the merits in order to build a complete record. If you have an answer, you better make it quick, because your time has expired. Let me very briefly attempt to. Your Honor, I believe that the question of morality, to the extent it's been raised here, is identical to the question of marital status discrimination. The only, quote unquote, moral reason offered was, or the only moral reason, is the existence or nonexistence of an extramarital affair. And I'm not sure it's possible to separate the two in this case. Of course, as described in our brief, we don't believe that that was actually the reason for the termination, and it's documented in both the opinion and in the materials we've cited. Mr. Averbach, thank you very much for your argument. And one little suggestion is you need to keep your voice constantly up at a little bit more projection and volume for us to hear you well. We heard you, but just barely. Thank you very much. Mr. Adelman, rebuttal for you. You have two minutes, sir. Yes, Your Honors. With the brief remaining time, Your Honor, I'd like to deal with two of the issues that were brought up during Mr. Averbach's time. And that is, number one, I want to assure Your Honors that virtually all of the witnesses who were excluded were prepared to testify to matters of professional responsibility and to activities that were perpetrated by the supervisors that were related to marital status discrimination or had to do with comparison of Dr. Hancock's position with others. And in particular, the only two women who were comparable as single women were Jennifer Cerny, who was the superintendent's not-so-secret girlfriend, who got one promotion before— But she testified. There was no exclusion there. No, she testified. But I'm saying, in terms of the issue of comparison, I've kind of switched gears quickly because I didn't have much time. And Maria Carnevale, who was initially a volunteer and who was the pet project of Mr. Hughes, who was Dr. Hancock's supervisor, both of them were treated extraordinarily well, given all kinds of benefits and promotions. And I think that if those are and those should be the two people for whom comparison should be made to Dr. Hancock, I think that the conclusion is obvious that there was discrimination. Did the latter lady testify, Carnevale? Yes, she did. So she was also allowed? Yes. All right. Yeah. Thank you. Thank you, sir. We thank both counsel. We'll take the case under advisement.